IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY HENRY, | : | CIVIL ACTION |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| 61 PA. STAT. § 331.21 (1941), | : | NO. 17-4583 |
|     Defendant. | : | |

MEMORANDUM

**PAPPERT, J.**　　　　　　　　　　　　　　　　　　　　　　　　December 15, 2017

Anthony Henry is a state prisoner serving, without the possibility of parole, a life sentence for first degree murder, a crime he committed as an adult. He seeks declaratory and injunctive relief pursuant to 28 U.S.C. § 1983 contending that the Pennsylvania statute governing parole, interpreted by the Supreme Court of Pennsylvania in *Commonwealth v. Batts*, 66 A.3d 286 (Pa.2013) following the United States Supreme Court's decision in *Miller v. Alabama*, 567 U.S. 460 (2012), is unconstitutionally vague.[1] For the reasons set forth below, the Court dismisses Henry's Complaint with prejudice.

I

A

Prior to 2012, Pennsylvania law provided that "[a] person who has been convicted of a murder of the first degree or of murder of a law enforcement officer of the

---

[1] Plaintiff has named 61 Pa. Stat. § 331.21 (1941) as the sole defendant in this matter. The Court recognizes that plaintiff cannot name a statute as a defendant. Nevertheless, because plaintiff's claims lack merit as discussed below, the Court will dismiss plaintiff's complaint without requiring him to name a proper defendant. Moreover, as plaintiff notes, 61 Pa. Stat. § 331.21 was repealed and replaced by 61 Pa. Cons. Stat. Ann. § 6137 in 2009.

1

first degree shall be sentenced to death or to a term of life imprisonment" without the possibility of parole. 18 Pa. Cons. Stat. Ann. § 1102(a)(1). Those convicted of second degree murder also received life imprisonment without the possibility of parole. *See id.* § 1102(b). Under the Juvenile Act, murder is excluded from the definition of delinquent acts generally adjudicated by juvenile courts. *See generally* 42 Pa. Cons. Stat. Ann. §§ 6302, 6322(a). In 2005, the Supreme Court concluded in *Roper v. Simmons*, 543 U.S. 551, 578 (2005), that the Eighth Amendment forbids the execution of juvenile offenders. Thus, prior to 2012, juveniles in Pennsylvania convicted of first or second degree murder automatically received a sentence of life imprisonment without parole.

In 2012, the Supreme Court held "that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *Miller v. Alabama*, 567 U.S. 460, 479 (2012). Relying on *Roper* and *Graham v. Florida*, 560 U.S. 48 (2010), the Court reiterated "that children are constitutionally different from adults for purposes of sentencing." *Miller*, 567 U.S. at 471. The Court stated:

> Because juveniles have diminished culpability and greater prospects for reform, we explained, "they are less deserving of the most severe punishments." *Graham*, 560 U.S. at 68. Those cases relied on three significant gaps between juveniles and adults. First, children have a "'lack of maturity and an underdeveloped sense of responsibility,'" leading to recklessness, impulsivity, and heedless risk-taking. *Roper*, 543 U.S. at 569. Second, children "are more vulnerable . . . to negative influences and outside pressures," including from their family and peers; they have limited "contro[l] over their own environment" and lack the ability to extricate themselves from horrific, crime-producing settings. *Ibid.* And third, a child's character is not as "well formed" as an adult's; his traits are "less fixed" and his actions less likely to be "evidence of irretrievabl[e] deprav[ity]." *Id.* at 570.

*Miller*, 567 U.S. at 471 (internal parallel citations omitted) (alterations in original).

2

Pennsylvania's Parole Code prohibits any person who is sentenced to life imprisonment from being released on parole. 61 Pa. Cons. Stat. Ann. § 6137(a)(1). In *Batts*, the Supreme Court of Pennsylvania was presented with the question of how to handle cases involving juveniles who had been convicted of murder prior to *Miller* and subjected to a mandatory sentence of life imprisonment without parole. 66 A.3d 286 (Pa. 2013). The *Batts* court observed that juveniles convicted of murder could still be sentenced to life in prison without the possibility of parole in accordance with *Miller* after an individualized assessment of the factors discussed in *Miller*. *Id.* at 296. Juvenile defendants for whom the sentencing court determined a life-without-parole sentence is inappropriate would still receive a mandatory maximum sentence of life imprisonment, but the sentencing court should also determine a minimum sentence for those offenders, thereby "striking the prohibition against paroling an individual sentenced to serve life in prison in section 6137(a)(1) as applied to these offenders." *Commonwealth v. Batts*, 163 A.3d 410, 421 (Pa. 2017) (citing *Batts*, 66 A.3d at 296-97).[2]

---

[2] Recently, the Supreme Court of Pennsylvania noted that

> [d]espite the passage of four years since we issued our decision in *Batts I*, the General Assembly has not passed a statute addressing the sentencing of juveniles convicted of first-degree murder pre-*Miller*, nor has it amended the pertinent provisions that were severed in *Batts I*. As we have previously stated, "the General Assembly is quite able to address what it believes is a judicial misinterpretation of a statute," and its failure to do so in the years following the *Batts I* decision gives rise to the presumption that the General Assembly is in agreement with our interpretation.

*Commonwealth v. Batts*, 163 A.3d 410, 445 (Pa. 2017).

B

Henry contends that *Batts* "gave new interpretation to the [Parole] Code. Under the Court's new interpretation the Board may (selectively) and albeit, outside the commutation framework, release on parole convicts serving life imprisonment." (Compl. at 2.) He argues, however, that "[i]f the Parole Code is to be given any meaning at all, it must be that the Legislature intended to deny life sentenced convicts parole, leaving the prerogative of mercy to the [Governor] through ordinance of the Constitution." (*Id.*) Henry alleges that "the executive's power to pardon expressly prohibit[s] the [Parole] Board from paroling convicts serving life imprisonment, notwithstanding *Batts*." (*Id.* at 2-3.) According to Henry, "[t]he Board, in cahoots with *Batts*, intruded upon the Governor's power to commute sentences." (*Id.* at 3.)

Henry argues that "[u]nder controlling federal law, the Board cannot treat similarly situated individuals differently with no rational basis." (*Id.*) He contends that "[s]tate and federal equal Protection Clauses forbid the Parole Code, see 61 Pa. C.S. § 331.21 (the board is prohibited from releasing convicts serving life imprisonment), from extending parole review to some first and second degree murderers but denying it to others." (*Id.* at 6.) He specifically references that "[t]here are currently dozens of convicts across the Commonwealth initially sentenced as juveniles to mandatory life who have been paroled or are being considered for parole." (*Id.* at 6-7.) Henry argues that the Parole Code "does not distinguish between one convict sentenced to 'life' and another," and that"[t]he current dual interpretation of the Code violates the state and federal equal protection prohibition against treating similarly situated individuals different[ly]." (*Id.* at 7.) He further contends that the

Parole Code, as applied, denies substantive due process as guaranteed by the Fourteenth Amendment. (*Id.* at 9.)

II

The Court grants Henry leave to proceed *in forma pauperis* because it appears that he is not capable of paying the fees to commence this civil action.[3] Accordingly, the Court must dismiss Henry's complaint if it is frivolous or fails to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(ii). A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). It is legally baseless if "based on an indisputably meritless legal theory," *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995), and factually baseless "when the facts alleged rise to the level of the irrational or the wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Since Henry is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

---

[3] In an order docketed November 27, 2017, the Court gave plaintiff fourteen days to decide whether he would prefer to proceed *in forma pauperis* or withdraw his complaint, as he had filed documents suggesting that he sought to pursue both avenues. (ECF No. 7.) Henry responded with a letter in which he stated that he did not want to withdraw his case, and that he preferred to proceed *in forma pauperis*. (ECF No. 8.) As plaintiff is a prisoner subject to the Prison Litigation Reform Act who is now proceeding *in forma pauperis*, he will be obligated to pay the $350 filing fee in installments pursuant to 28 U.S.C. § 1915(b), as the Court informed him on two prior occasions. (*See* ECF Nos. 2 & 7.)

III

A

Henry first alleges that application of the Parole Code, as interpreted by the Supreme Court of Pennsylvania in *Batts*, violates his rights to substantive due process under the Fourteenth Amendment. The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The substantive component of the Due Process Clause limits what government may do regardless of the fairness of procedures that it employs, and covers government conduct in both legislative and executive capacities." *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 399 (3d Cir. 2000), *abrogated on other grounds as recognized in United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA*, 316 F.3d 392 (3d Cir. 2003). "Typically, a legislative act will withstand substantive due process challenge if the government 'identifies a legitimate state interest that the legislature could rationally conclude was served by the statute,' although legislative acts that burden certain 'fundamental' rights may be subject to stricter scrutiny." *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 139 (3d Cir. 2000) (quoting *Alexander v. Whitman*, 114 F.3d 1392, 1403 (3d Cir. 1997) (citation omitted)). In other words, "when a plaintiff challenges the validity of a legislative act, substantive due process typically demands that the act be rationally related to some legitimate government purpose." *Nicholas*, 227 F.3d at 142.

It is well-settled that "there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979).

Moreover, the existence of a state parole system alone does not create a constitutionally protected interest. *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987); *see Rodgers v. Parole Agent SCI-Frackville*, 916 F. Supp. 474, 476-77 (E.D. Pa. 1996) (noting that Pennsylvania's parole statute does not create a liberty interest in the right to be paroled). The United States Court of Appeals for the Third Circuit has held, however, that "even if a state statute does not give rise to a liberty interest in parole release under *Greenholtz*, once a state institutes a parole system all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons." *Block v. Potter*, 631 F.2d 233, 236 (3d Cir. 1980). Relief, however, is only available if a plaintiff can demonstrate that parole has been arbitrarily denied based upon some impermissible reason such as "race, religion, or political beliefs, or on frivolous criteria with no rational relationship to the purpose of parole such as the color of one's eyes, the school one attended, or the style of one's clothing." *Id.* at 236 n.2.

Here, Henry bases his due process claim on the fact that, after *Miller*, juveniles in Pennsylvania who were sentenced to life without parole are now eligible to be considered for parole, whereas adults who were sentenced to life without parole are not. He has not, however, alleged that his inability to be considered for parole is based upon some impermissible reason. He is merely unhappy that juveniles who were sentenced to life imprisonment for first or second degree murder must now be at least given the opportunity to be considered for parole in order to comport with the Eighth Amendment's prohibition against cruel and unusual punishment. It is entirely logical for the Commonwealth of Pennsylvania to treat adult convicts differently from juvenile

7

convicts as required by *Miller*. For these reasons, Henry's due process argument is legally frivolous and fails to state a claim.

B

Henry also contends that application of the Parole Code, as interpreted by the Supreme Court of Pennsylvania in *Batts*, violates his rights under the Equal Protection Clause of the Fourteenth Amendment. (Compl. at 9.) The Equal Protection Clause directs that all similarly situated individuals be treated alike. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, a plaintiff must demonstrate that he is a member of a protected class and that he received different treatment than that received by other similarly-situated individuals. *See Oliveira v. Twp. of Irvington*, 41 F. App'x 555, 559 (3d Cir. 2002). Claims for equal protection violations are subject to different levels of scrutiny depending on the status of the claimant. Here, because prisoners do not constitute a protected class for Fourteenth Amendment purposes, *see Myrie v. Comm'r, N.J. Dep't of Corr.*, 267 F.3d 251, 263 (3d Cir. 2001), and because there is no fundamental right to parole under the Fourteenth Amendment, *see Allen*, 482 U.S. at 373, Henry's equal protection claim is properly assessed under a rational basis review. Thus, he must demonstrate that he has been arbitrarily treated differently from similarly situated inmates, that such treatment was done intentionally, and that this difference bears no rational relation to any legitimate penological interest. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006).

Again, Henry bases his argument on the fact that, after *Miller*, juveniles in Pennsylvania who were sentenced to life without parole are now eligible to be

8

considered for parole, whereas adults who were sentenced to life without parole are not. As noted above, the Supreme Court has specifically established that "children are constitutionally different from adults for purposes of sentencing." *Miller*, 567 U.S. at 471. The *Miller* Court noted that "the distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes." *Id.* at 472. Adult offenders, therefore, are not similarly situated to juvenile offenders. *See Pritchard v. Wetzel*, No. 13-5406, 2014 WL 199907, at *3 (E.D. Pa. Jan. 16, 2014) (rejecting petitioner's equal protection claim because "the Supreme Court in *Miller* and the line of cases it followed justified differential treatment for juveniles as opposed to adults"); *see also Bronson v. Gen. Assembly of Pa.*, 3:16-CV-00472, 2017 WL 3431918, at *5 (M.D. Pa. July 17, 2017) (rejecting equal protection claim raised by adult offender pursuant to *Miller*), *Report and Recommendation adopted*, 2017 WL 3427977 (M.D. Pa. Aug. 9, 2017). For that reason alone, Henry's equal protection argument is also legally frivolous and fails to state a claim for relief.

IV

For the foregoing reasons, the Court will dismiss Henry's Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii), and he will not be permitted to file an amended complaint, as amendment would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 112-13 (3d Cir. 2002). An appropriate order follows, which shall be docketed separately.

        ***/s/ Gerald J. Pappert***
        GERALD J. PAPPERT, J.